UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BAR HARBOR BANK & TRUST,       ) | |
|     Plaintiff,       ) | |
| )| |
| v.       ) | 1:21-cv-00201-LEW |
| ) | |
| THE HANOVER INSURANCE       ) | |
| GROUP, INC., a/k/a HANOVER       ) | |
| INSURANCE COMPANY       ) | |
|     Defendant.       ) | |

## ORDER ON MOTION TO DISMISS

Defendant, the Hanover Insurance Group, has moved to dismiss Plaintiff's suit to recover under an insurance policy on the grounds that the suit is untimely under the policy's terms. For the reasons discussed below, I deny Defendant's motion.

## BACKGROUND

This case arises from an insurance claim under a policy to insure a fishing boat, the *Isla & Grayson*. In 2018, Travis Perry, the boat's owner, contracted with Defendant to insure the *Isla & Grayson*. Defendant issued what appears to be a fairly standard insurance policy (the "Policy"), insuring the *Isla & Grayson* against losses up to $800,00 including loss by fire. The Policy provides that any "suit, action or proceeding for the recovery of any claim" under the Policy must be brought within twelve months of the loss "out of which the said claim arose," unless "the laws of the state within which [the] policy is

issued" forbid such a limitation period. Compl. Ex. A 3 (ECF No. 1-1). Both parties agree with that the Policy was issued in Columbia Falls, Maine.

Plaintiff, Bar Harbor Bank & Trust, is the loss payee under the Policy. Compl. Ex. A 1. In 2016—that is, before the issuance of the Policy—Plaintiff lent Perry $500,000 secured by a mortgage on the *Isla & Grayson*. Perry is now in default on the loan, which has an outstanding balance of $400,663.93 plus certain fees and costs.

On August 22, 2019, the *Isla & Grayson* was damaged by fire and, though not entirely destroyed, was deemed a total loss. Defendant concluded, after investigating the fire, that Perry had caused the fire in order to collect on the insurance policy, an allegation that Perry disputes. As a result, in March 2020, Defendant denied Perry's claim to recover under the Policy. On August 19, 2020, Perry commenced an action before this court seeking to recover under the Policy. *See* Complaint, *Perry v. The Hanover Insurance Group, Inc.*, No. 20-cv-301-LEW (D. Me. Aug. 19, 2020). That action is ongoing.

On July 19, 2021, Plaintiff brought this action seeking to recover as loss payee under the Policy. Compl. 5. Plaintiff contends that, because the Policy's insurance against loss by fire extends to losses "caused by vandalism, sabotage, or malicious mischief," and because nothing in the Policy prevents a loss payee from recovering for losses intentionally caused by the insured, Plaintiff has a right to recover under the Policy even if Perry caused the boat to be burned. Compl. 3–5.

Defendant moved to dismiss on the grounds that this action is untimely under the Policy's terms and so does not state a claim upon which relief can be granted. Def.'s Mot. 3 (ECF No. 11). Specifically, Defendant argues that Plaintiff's claim, brought twenty-three

months after the loss, exceeds the Policy's putative twelve-month limitation period, and that no provision of Maine law mandates a longer limitation period here. Def.'s Mot. 3–5.

## DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alterations omitted). For the purposes of such a motion, I accept all of the complaint's factual allegations as true, and ask only whether these "facts, taken in their entirety, permit the reasonable inference that the defendant is liable" under the applicable legal standards. *Id.* (citation omitted). Whether Plaintiff has a claim against Defendant turns on whether Maine law forbids the Policy's one-year limitation period and mandates a two-year limitation period instead, thereby rendering this case timely.

Plaintiff points to § 3002 of the Maine Insurance Code, which provides that "[n]o insurer may issue fire insurance policies on property in this State other than those" which permit suits for recovery "commenced within two years next after inception of the loss." 24-A M.R.S. § 3002. Section 3002 lays out, in exacting detail, the requirements for standard fire insurance policies issued in the State of Maine, including particular language that the policy must contain as well as general conditions that must obtain. Where applicable, § 3002's two-year limitation period overrides any shorter limitation period contained in an insurance contract, and the two-year period is implicitly incorporated into the contract. *Molleur v. Dairyland Ins. Co.*, 942 A.2d 1197, 1201 (Me. 2008).

However, § 3002 does not apply here, because the Policy is not a standard fire insurance policy. The Policy's purpose was to insure against the bevy of losses that might arise in the course of owning a boat—of which fire is but one of many—making clear that it is a marine insurance policy rather than a fire policy. *See Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 603 (1st Cir. 1997) ("[A]n insurance policy's predominant purpose, as measured by the dimensions of the contingency insured against and the risk assumed, determines the nature of the insurance."). And common sense suggests that marine insurance policies are not fire insurance policies for the purpose of § 3002: if every policy that covered loss by fire had to conform to the standard fire policy, the standard fire policy would effectively swallow a large part of Maine's insurance infrastructure. *Cf. United States v. D'Amario*, 412 F.3d 253, 255 (1st Cir. 2005) (stating that "common sense" should guide statutory interpretation).

It is presumably for this reason that the Maine Insurance Code also includes a provision governing "combination" policies, which insure against fire while also providing "substantial coverage against other perils." 24-A M.R.S. § 3003.[1] Under § 3003, combination policies need not comply with all of the strictures of the standard fire policy so long as their coverage is "not less than the coverage afforded by [a] standard fire policy" and is subject "to the same general provisions and stipulations [as a] standard fire policy." *Id*. As the requirement of a two-year limitation period is listed among the "General

---

[1] Though neither party cited Section 3003 in its submissions to the court, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 99 (1991).

Conditions and Stipulations" of the standard fire policy, *id.* § 3002, it follows that combination policies must also permit two-year limitation period for actions to recover for fire-related losses.[2]

The Policy is a combination policy for the purpose of § 3003, so the two-year limitation period governs Plaintiff's claim. The Policy meets § 3003's definition of a combination policy insofar as it covers all perils "of the waters named herein, fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and mariners and all other like perils that shall come to the hurt, detriment or damage of" the *Isla & Grayson*. Compl. Ex. A 2. The Policy falls also within § 3003's scope. Section 3003 applies to "all contracts of property insurance covering subjects located in this State." 24-A M.R.S. § 3001 (defining scope). Property insurance is, in turn, capaciously defined to include "insurance on real or personal property of every kind." 24-A M.R.S. § 705. The Policy plainly fits the bill: the *Isla & Grayson* was personal property, it was located in Maine, and the Policy insured against its loss. *See Aho v. Acadia Ins. Co.*, No. CV-03-060, 2005 WL 2723635, at *9 (Me. Super. Ct. Feb. 1, 2005) (concluding "that marine insurance is a type of property insurance"). Nor does the fact that Maine law defines marine insurance separately from property insurance, *see* 24-A M.R.S. §§ 705, 708, counsel otherwise,

---

[2] While courts construing similar statutory language in other states differ on whether the statutory filing deadlines applicable to standard fire policies apply to *non*-fire-related claims under combination policies, *see L & A United Grocers, Inc. v. Safeguard Ins. Co.*, 460 A.2d 587, 589 n.6 (Me. 1983) (cataloguing cases), they agree that such deadlines apply to fire-related claims, *see Forbes Farm P'ship v. Farm Fam. Mut. Ins. Co.*, 769 A.2d 366, 369 (N.H. 2001). *See also Bargaintown D.C., Inc. v. Bellefonte Ins. Co.,* 433 N.Y.S.2d 809, 809 (N.Y. App. Div. 1980), *aff'd*, 426 N.E.2d 469 (N.Y. 1981) (two-year limitation period applied to combination policy "with regard to losses by fire," but not other types of losses).

because "certain insurance coverages may come within the definitions of 2 or more kinds of insurance," 24-A M.R.S. § 701.

Defendant contends that the remainder of the Maine Insurance Code—specifically Chapter 27, which governs insurance contracts but expressly excludes "wet marine" insurance contracts such as the one at issue here—suggests that the Policy falls outside of § 3003's domain. Def.'s Rep. 5 (citing 24-A M.R.S. § 2401). To be sure, Chapter 27 does not apply to wet marine insurance contracts, *see* § 2401, and there is no doubt that the Policy is a wet marine insurance policy, *see id.* § 708(B)(2) (defining wet marine insurance as "[i]nsurance upon vessels, crafts, [and] hulls"). What's more, § 3001, which defines the scope for § 3003, states that "[a]ll contracts of property insurance covering subjects located in this State are subject to . . . the applicable provisions of chapter 27." *Id.* § 3001. Defendant argues that § 3001 thereby incorporates Chapter 27, including the express carve out of wet marine insurance, meaning that § 3003 cannot apply to the Policy. Def.'s Rep. 4–5 (ECF No. 15).

A straightforward reading of § 3001 suggests otherwise. The provision says that property insurance "contracts" are subject to Chapter 27—not that the laws governing property insurance are subject to Chapter 27. That is, the reference to "the applicable provisions of Chapter 27" simply clarifies that the laws specific to property insurance function in addition to the chapter of laws applicable to all insurance contracts; it does not suggest that any provision in Chapter 27 limits the scope of laws governing property insurance. That Chapter 27's laws on insurance contracts do not apply to wet marine insurance thus has no bearing on the scope of other laws, such as § 3003, governing

property insurance. If anything, § 3001's lack of any analogous limitation on the scope of property insurance laws, *see* § 3001, suggests an intent for property insurance provisions such as § 3003 to sweep more broadly. *See New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38, 59 (1st Cir. 2021) (courts generally presume that where the legislature "includes particular language" in one provision but "omits it in another," it intends different meanings) (citations omitted).

Defendant also argues that the distinct histories of marine insurance and fire insurance—the former is an ancient creature of maritime law, the latter a relatively modern statutory construct—require that marine insurance policies like the one at issue here be carved out from laws governing fire insurance. Def's Rep. 1–3. But where, as here, the legislature has enacted a law whose language is both clear and capacious, there is no need to dig deeper for hidden meanings. *See Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 96 (1st Cir. 2020) ("If a statute's plain meaning supplies a plausible interpretation, then that interpretation ordinarily wins the day."). In any event, history is not persuasive in this case. The presence of a statutory provision recognizing combination policies, *see* § 3003, evinces a legislative intent to expand the category of insurance policies that enjoy the statutory protection for fire policies beyond a narrow historical understanding of "fire insurance." What's more, while the unique history of fire insurance might counsel against applying fire insurance requirements to *non-fire* losses under combination or all-risk policies, the same cannot be said for claims, like the one in this case, that involve losses by fire.

The relevant period during which a claimant must file suit to enforce a claim under the Policy is the two-year limitation period imposed in § 3002 of the Maine Insurance Code

and incorporated by § 3003 of the code, not the one-year period that the Policy purports to impose. Because Plaintiff commenced this action twenty-three months after the *Isla & Grayson* was destroyed by fire, the action is timely.

Defendant's Motion to Dismiss is DENIED.

**SO ORDERED.**

Dated this 10th day of November, 2021.

                                                /s/ Lance E. Walker
                                          UNITED STATES DISTRICT JUDGE